UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DONNA BERGERON, ET AL.**                CIVIL ACTION

**VERSUS**                                 No. 08-4380

**SCOTT PERRILLOUX ET AL.**                SECTION "B" (1)

## ORDER and REASONS

Before this Court is Plaintiff Donna Bergeron's and Defendants Scott Perrilloux's Cross Motions for Summary Judgment on the following issues: (1) In Pari Delicto; (2) Predicate RICO Acts; and (3) Prosecutorial Immunity. Additionally, before this Court is Defendant Three Way Properties, L.L.C.'s Cross Motion for Summary Judgment on the issue of Predicate RICO Acts. For the following reasons, Defendants' Motions for Summary Judgment as to all three issues are **GRANTED,** and Defendant Three Way Properties L.L.C.'s Motion for Summary Judgment on the issue of Predicate RICO Acts is **GRANTED**. Plaintiffs Motion for Summary Judgment is **DENIED** as to all three issues.

## DISCUSSION

Donna Bergeron and her son Chris Phillips ("Plaintiffs") filed the instant suit to recover damages for alleged Civil Rights and RICO violations committed by Scott Perrilloux, John T. Guzzardo,

Sr., John T. Guzzardo, Jr., J.T & Stella Guzzardo, Inc., and John Doe ("Defendants"). (Rec. Doc. 1 at 8-9). Plaintiffs filed the suit on September 12, 2008, and the action arose from an incident, whereby Chris Phillips alleged that John T. Guzzardo Jr. inappropriately touched him. (Rec. Doc. 35-3 at 2). At the time of the alleged incident, Phillips was 17-years-old. (Rec. Doc. 1 at 3). A few days later Phillips alleged that Guzzardo Jr. threatened him about telling anyone what happened. (Rec. Doc. 35-2 at 2). Phillips then informed his mother of the situation; together they went to the Hammond Police Department and pressed charges against Guzzardo Jr. (Rec. Doc. 35-3 at 2). Guzzardo Jr. was subsequently arrested. (Rec. Doc. 52-18 at 1.)

After Guzzardo Jr. was arrested, John Doe, who is unknown to all parties, called Phillips' grandmother offering a "bribe of $1,000" to Phillips if he dropped the charges. (Rec. Doc. 52-14 at 8). Phillips' grandmother and his father discussed the bribe with Phillips, and advised him to take it because they were worried that some harm would befall him if he didn't take the money. (Rec. Doc. 52-14 at 9). Phillips then went to the Hammond Police Department to try to drop the charges, but they informed him that he would have to wait for his first court hearing to drop the charges. (Rec. Doc. 35-3 at 3). Phillips called his grandmother for guidance. The grandmother alleged that she called John Doe, who instructed her to tell Phillips to go directly to the District

Attorney's Office, where Phillips met with Scott Perrilloux. (Rec. Doc. 35-3 at 3). Perrilloux has been the acting District Attorney for Tangipahoa Parish since 1997. Perrilloux gave Phillips a form, and Plaintiffs allege that Perrilloux instructed a staff member to accompany Phillips to attorney Charles Christmas in order to have the form notarized. (Rec. Doc 35-3 at 3). The staff member allegedly then brought the signed and notarized form back to the courthouse. (Rec. Doc. 35-3 at 3.) Later that day, $1000 was delivered to Phillips' grandmother in an envelope. (Rec. Doc. 35-3 at 4). Phillips went to his grandmother's bar, picked up the envelope, and used it to pay taxes on his car. (Rec. Doc. 59-2 at 9).

Plaintiffs claim that Perrilloux conspired with the Guzzardos to stop the Plaintiffs from going through with their criminal charges. (Rec. Doc. 35-3 at 4). Plaintiffs believe that Defendants' motive was to protect their financial interest in the Hi-Ho restaurant business. (Rec. Doc. 35-3 at 4). Plaintiffs contend that a prior 1999 arrest of Guzzardo, Jr. for indecent behavior with several juveniles received an unusually lenient sentence. (Rec. Doc. 35-3 at 4).

Inferentially, Plaintiffs imply that Perrilloux was granted a business interest in the Guzzardo family restaurant for helping Guzzardo Jr. with the 1999 case. (Rec. Doc. 35-3 at 5). But both parties agree that not long after the 1999 case Perrilloux acquired

his interest in the Guzzardo restaurant business through Three Way Properties, LLC. (Rec. Doc 35-3 at 5) (Rec. Doc. 36-2 at 4). Thus, Plaintiffs contend that when Phillips filed charges in the instant case, Perrilloux, Guzzardo Jr., Guzzardo Sr., and John Doe "conspired together to threaten and coerce Phillips into dropping the charges against Guzzard Jr., in an effort to, among other things, protect their business interests and protect Defendant Perrilloux who is up for reelection in October 4, 2008." (Rec. Doc. 1 at 5).

**A. Standard for Motion for Summary Judgment**

Summary Judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment on the matter. Fed. R. Civ. P. 56(c); See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party has the burden of showing there is no genuine issue of material fact, but may discharge this burden by showing the absence of evidence necessary to support an essential element of the nonmoving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists if evidence would allow a reasonable jury to return a verdict for the nonmovant. *Id.*

**B. *In Pari Delicto***

*In Pari Delicto* is a common law defense that is derived from the Latin phrase, *in pari delicto potior est conditio defendentis*, which means in a case of equal or mutual fault the position of the defending party is the better one. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (U.S. 1985). Principally, *in pari delicto* is based on two premises: (1) Courts should not lend their good offices to mediating disputes among wrongdoers; and (2) Denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality. *Id.* "A defendant cannot escape liability unless, as a direct result of the plaintiff's own actions, the plaintiff bears at least substantially equal responsibility for the underlying illegality." *Pinter v. Dahl*, 486 U.S. 622, 635-636 (U.S. 1988). The plaintiff must act as a voluntary participant in the unlawful activity that is the subject of the suit. *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1197 (5th Cir. 1995).

The Fifth Circuit has recognized *in pari delicto* as a cognizable defense to a civil RICO claim. *Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008). Essentially, in *Rogers* the court adopted the Eleventh Circuit's analysis from *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152-56 (11th Cir.), cert. denied, *Laddin v. Reliance Trust Co.*, 127 S. Ct.

45, 166 L. Ed. 2d 19 (2006). In *Official Comm. Of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1154 (11th Cir. 2006), the court explained that the application of the defense of *in pari delicto* to causes of action created by federal statutes depends on two factors: (1) the plaintiffs' active participation in the violation *vel non* and (2) the policy goals of the federal statute. Thus, because federal RICO violations require affirmative wrongdoing rather than passive acquiescence *in pari delicto* would not be precluded in the RICO context. *Id*. at 1155-1156. The court also held that *in pari delicto* did not interfere with civil RICO's policy goals, explaining that it would be anomalous, to say the least, for the RICO statute to make racketeering unlawful in one provision, yet award the violator with treble damages in another provision of the same statute. *Id*. at 1155.

In *Rogers v. McDorman*, 521 F.3d 381, 396-397(5th Cir. 2008), the court determined that because the defense of *in pari delicto* applied to the RICO violations in the case, a jury's findings of RICO liability but zero damages did not render the verdict inconsistent. This case involved a used car salesman who effectively created a check-kiting scheme which he used to cover short-term financing gaps. *Id*. at 383. The scheme moved money between three banks, but it was unusual because one of the banks actively participated in the scheme by issuing cashier's checks to the salesman. *Id*. Notably, for the scheme to work, it required

this bank's participation, in fact, the bank president directed employees to assist the used car salesman. The board of directors of the participating bank received three complaints from their compliance officer, and only reluctantly did they bring suit under RICO for the check-kiting scheme. *Id*. at 385. In affirming the jury's findings, the court explained that "[a]llowing Directors to recover under RICO would not divest RICO violators of their ill-gotten gains, rather it would let plaintiffs found by a jury to bear substantially equal responsibility for their injuries to recover damages; the check-kiting scheme could not work without [the bank's] active participation, and the jury found that Directors were active participants in the wrongdoing." *Id*. at 391. Poignantly, the court completed its analysis by stating that "this is not a situation where an innocent or passive victim is being deprived of a RICO remedy… reward[ing] conspirators treble damages… hardly seems to further RICO's deterrence goals." *Id*. at 391.

In turning to the instant case, several facts are relevant for determining whether *in pari delicto* applies and determining its effect. Plaintiffs accepted the bribe from John Doe, and went on to spend the $1000. (Rec. Doc. 59-2 at 9). Phillips decided to accept the bribe after discussing it with his grandmother and his father. (Rec. Doc. 52-14 at 9). The record simply does not substantiate that the acceptance of the bribe was made under some type of duress. In fact, after deciding to take the bribe Phillips

traveled alone to meet one of the Defendants whom he now asks the court to believe were threatening his life. (Rec. Doc. 35-3 at 3). Plaintiffs actively participated in the wrongdoing they now ask a remedy from; plaintiffs are co-conspirators. With regard to the policy goals of RICO, precluded use of *in pari delicto* in this case would do a disservice to the goals of RICO. Even a minor aged 17 can be held accountable for their illegal activity, including conspiring to commit a federal offense. See *United States v. DeLeon*, 768 F.2d 629 (5th Cir. 1985). If allowed to recover under RICO, co-conspirators would further the exact evil they complain of. "This is not a situation where an innocent or passive victim is being deprived of a RICO remedy… reward[ing] conspirators treble damages… hardly seems to further RICO's deterrence goals." *Rogers*, 521 F.3d at 391.

**C. Predicate RICO acts**

"The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, provides plaintiffs with a private civil action to recover treble damages for injury by reason of a violation of 18 U.S.C. §1962." *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 785 F.2d 1274, 1280 (5th Cir. 1986). In order to state a proper civil claim under 18 U.S.C. §1964, "a plaintiff must show (1)a violation of § 1962, (2) an injury to his business or property, and (3) that his injury was

proximately caused by a RICO violation." *Khurana v. Innovative Health Care Sys*., 130 F.3d 143, 147 (5th Cir. 1997). Conducting an enterprise through a pattern of racketeering activity constitutes a violation of RICO. 18 U.S.C. §1962. RICO designates racketeering activity to include any act indictable under federal criminal provisions, including mail and wire fraud which are considered predicate acts. 18 U.S.C. §1961. RICO also classifies bribery, extortion, and witness tampering as predicate acts. *Khurana v. Innovative Health Care Sys*., 130 F.3d 143, 146 (5th Cir. 1997). "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). The racketerring activity must have occurred within ten years of each other. *Smoky Greenhaw Cotton Co.,* 785 F.2d at 1280.

In *Crowe v. Henry*, 43 F.3d 198 (5th Cir. La. 1995), the court outlined the specific requirements that a plaintiff must present to proceed on a RICO action. This case involved a plaintiff property owner who brought suit against his attorney, the attorney's law firm, each partner of the firm in their individual capacity, and the firm's insurer. *Id*. at 201. The plaintiff property owner contended that his attorney through the help of the firm had engaged in a series of fraudulent acts through which the attorney

converted for his personal benefit some of the plaintiff's property. *Id*. Specifically, the plaintiff property owner alleged that the attorney persuaded him to place settlement money into the law firm's account for worry of an adverse judgment in a suit that the attorney was litigating for the plaintiff. *Id*. The attorney then convinced him to place several immovables in the attorney's name in trust for sham consideration again to protect the property in the event of an adverse judgment. *Id*. at 202. Later the attorney and the plaintiff decided to farm this property in conjunction with another property with a farm operating agreement that combined the properties for mortgage purposes. *Id*. at 203. The plaintiff property owner brought suit after the attorney asked the plaintiff to label his percentage of the mortgage under the farm operating agreement as rent, and the plaintiff realized that the attorney's actions were done to "freeze him out and to erase any evidence of his ownership." *Id*. Litigation then ensued and members of the firm helped draft eviction documents against the plaintiff. *Id*. The district court held that the plaintiff property owner had failed to plead a RICO enterprise. *Id*.

In reviewing the decision of the district court, the Court of Appeals explained that to establish a RICO claim, a plaintiff would need to show the defendant as a person who engages in a pattern of racketeering activity, connected to the acquisition, establishment, conduct, or control of an enterprise. *Id*. at 204. "The RICO

person must be one that either poses or has posed a continuous threat of engaging in acts of racketeering…. [t]he continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988).

Plaintiffs' speculative allegations against Defendants are insufficient to maintain a RICO action. In their original complaint, Plaintiffs fail to specify which acts of the defendants that they deem as predicate acts. (Rec. Doc. 1 at 9). Plaintiffs Motion for Summary Judgment attempts to remedy this problem by asking this Court to designate Guzzardo Jr.'s alleged lenient sentence for the 1999 case and Perrilloux's gaining a Guzzardo business interest as a predicate act. (Rec. Doc. 35-4 at 11). Their argument is that Perrilloux was responsible for the lenient sentence, and in return he received an interest in the Guzzardo family restaurant business, which amounts to bribery. (Rec. Doc. 35-4 at 10.) Plaintiffs combine this alleged impropriety with the unsubstantiated claim that Defendants instructed John Doe to offer a bribe to Phillips to drop the charges against Guzzardo Jr. to constitute a pattern of racketeering activity. (Rec. Doc. 35-3 at 4).

Plaintiffs' theory of events has a series of notable gaps. They speculate that there was an agreement between Defendants to

coerce or bribe Phillips to drop the charges. Plaintiffs have failed to show admissible evidence that tend to create a nexus conspiracy connection between Defendants. Plaintiffs use innuendo and conclusory assertions to prove that which must be legally quantifiable. As noted earlier, Plaintiffs fail to reconcile their own complicity in the alleged scheme, which has adverse legal effects on asserted claims. Even assuming these gaps were inexistent, Plaintiffs present at most two predicate acts about nine years apart, with the last act requiring their participation. Defendants alleged actions were too isolated and sporadic to support a finding of a RICO or other conspiracy. "These few acts, spread out over a [nine] year period, simply do not show the continuous threat of racketeering activity that RICO was designed to address." *Crowe*, 43 F.3d at 204.

**D. Prosecutorial Immunity**

A district attorney serves as prosecutor, and as such in the performance of the duties imposed by law, a prosecutor in their advocacy role, is entitled to absolute immunity from civil actions for malicious prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 422 (U.S. 1976), citing, *Yaselli v. Goff*, 12 F. 2d 396 (1926). "The immunity is absolute, and is grounded on principles of public policy." *Id*. Prosecutors with only qualified immunity would face the threat of 42 U.S.C. § 1983 suits that would undermine their

overall performance of duties.  *Id*. at 424.  The ultimate fairness of the entire criminal justice system could be weakened by subjecting prosecutors to 42 U.S.C. § 1983 liability.  *Id*. at 427. Allowing civil actions to be filed against prosecutors for their decision to prosecute or not prosecute individuals would impede the prosecutor "away from the desired objective of stricter and fairer law enforcement."  *Pearson v. Reed*, 6 Cal. App. 2d 277, 287, 44 P. 2d 592, 597 (1935).  "Whether or not to institute a prosecution necessarily encompasses the question of precisely what charges will or will not be made[;] hence a prosecutor has absolute immunity for his decision as to what offenses are and are not to be charged." Ying *Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir. 1993).

But prosecutorial immunity, as recognized in *Imbler*, does not extend to all acts the prosecutor engages in.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 272, 125 L. Ed. 2d 209, 113 S. Ct. 2606 (1993).  The Supreme Court has established a functional test that created absolute immunity for prosecutors with respect to activities that are inherent to the judicial phase of the criminal process. *Id*. Conduct falling within this category is not limited to acts conducted in the courtroom. *Id.*  The concept of absolute immunity has been broadened by the courts to include agency officials that perform functions analogous to prosecutors. *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007). Thus, even

when employees of the prosecutor are alleged to have coerced and intimidated a witness to give false testimony, they are entitled to absolute immunity if they are acting in an advocacy role. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).

Without citing any cases, Plaintiffs, in the instant case, contend that Phillips status as a victim of a crime instead of a defendant distinguishes this case, placing it outside the scope of absolute immunity envisioned by the Supreme Court in *Imbler*. (Rec. Doc. 35-4 at 13). Plaintiffs also contend that Perrilloux, in allegedly conspiring to force Phillips to drop the charges, acted outside his capacity of prosecutor. (Rec. Doc. 35-4 at 15). The problem with both of Plaintiffs contentions is that they lack factual support in the record. Phillips actively participated in the crime that he now claims to be a victim of. (Rec. Doc. 59-2 at 9). Additionally, the allegations here involve the historical prosecutorial function of deciding whether or not to accept or refuse prosecution after initial arrest. Intimidating a witness to give false testimony and coercing a complainant to drop charges are akin to advocacy functions rather than investigatory ones. Such conduct by prosecutors certainly incite ethical concerns. But they would not necessarily implicate constitutional ones. *Cousin*, supra. Plaintiffs fail to show any acts of Perrilloux which could be deemed to be outside his capacity of prosecutor. Inferences and

innuendo of impropriety do not amount to legally principled concepts which would allow the relief sought here.

To the extent Plaintiffs' claims might arise under state law, and considering that whatever discovery taken here can be used in state court, the court declines to exercise supplemental jurisdiction over remaining state law claims, if any.

New Orleans, Louisiana, this 6th day of August, 2009.

_____
Ivan L.R. Lemelle
United States District Judge